2111 United States v. Sweargin. Ms. Greek. Thank you, your honor. Good morning. May it please the court and counsel. I'm Jane Greek, assistant federal public defender, and I represent Mr. Sweargin. Your honors, I'd like to begin with just defining the as the way that the guidelines define coercion. Coercion is defined as conduct that negates the voluntariness of the victim, and that's in application note two. There are three major problems with the application of coercion to the facts of this case. The first problem, I believe, and the first error made by the district court in applying the erroneous or excuse me, was erroneous in applying coercion to these facts are that by every account, Ms. Morales at the hotel in Hobbs, New Mexico, did not engage in prostitution. When she was approached by a person who came to her door and evidently propositioned her for a certain amount of money, she refused. She evidently let him into the room, said, and I quote, she wouldn't do anything for $80, and then he got up and left the room. Didn't your client admit that he was engaged in sex trafficking? Did Mr. Sweargin admit that he was engaged in sex trafficking? Your honor, there was evidence presented that on the way to the casino in Hobbs, he had hinted at prostitution. What was the crime he pled guilty to? He pled guilty to transferring persons across state lines for prostitution. Okay, so he's admitted to that crime. Yes, your honor. And the question presented in your appeal is whether there was some coercion or influence over the victim, correct? Correct. And why isn't the fact that he was attempting to blackmail the victim with videos or photos if she refused to travel with him to Hobbs? Why isn't that some influence or something that would comply with application note two? Your honor, the facts actually were not that he was trying to blackmail her to travel with him to Hobbs. The evidence presented at the evidentiary hearing on April 19th were that the so-called blackmail, it was, it was the exchange about the illicit sexual tape for not giving him $100. That event happened on May 17th of 2017. On June, the next event that happened was on June 6th of 2017, Ms. Morales reported to the Lubbock Police Department that he had attempted to post these videos of her. In her report on June 6th to the prostitution. Following that... But doesn't that suggest though that she was being intimidated by his conduct? The evidence as presented simply was that she reported to the Lubbock Police that he was trying to post these videos of her. She did not mention intimidation. She was upset. They were in a tumultuous relationship and they were breaking up. And I believe her words to the Lubbock Police Department were, he's so upset with me that he is trying to post these videos. And that's what she was reporting. Well, um, didn't the district court took from that, that, um, that was evidence that unless, um, unless she accompanied him to New Mexico, she was under the threat of exposure. And that's one of the reasons they ended up in the casino in Hobbs. Your Honor, there was no evidence presented at any time. Um, and I don't believe there were in the district court found that that trip to Hobbs from May 17th when the video exchange happened over their telephones. Um, the June 6th police report, there was no evidence presented that there was any coercion or anything other than a voluntary voluntariness on the part of all three people to travel, travel from Lubbock to Hobbs victim testified the pre-sentence or at the sentencing hearing? No, your Honor. Well, I have a question as to what you just said, counsel, because at the very conclusion of the district court's determination, he says, regardless, even without consideration of the text messages between defendant and Morales, the court still finds that the defendant coerced Morales when they got to the casino. Your Honor, the evidence of the choking and the fight happened was reported and it is reported that it was reported that Morales was coercing Morales and positioning her for $80. So by definition, by definition of coercion, and that is conduct that negates the voluntariness of the victim and event that happens after the, the potential prostitution event cannot be coercion. Coercion is specifically to negate voluntariness of the, of the victim. I would refer to someone forcing typically young women to do something against their will who have no other recourse. And that coercion by definition happens beforehand. So your, your, your client benefits then because he was caught by the police before she could be forced into the next encounter. Excuse me, your Honor? Well, so your, your client wins on this element because he was caught by the police before he could force the victim to engage in a future prostitution? Your Honor, if it happens in a future case, then it would be appropriate for a future case. With respect to the facts of this case and this crime, there's no evidence that any coercion happened on the part of Mr. Swearegen to Ms., Ms. Hobbs. What if there was another man in the hallway waiting to, uh, for a subsequent encounter? If I, if I changed the facts slightly, um, would, would, um, would that be coercion under the application? Your Honor, your Honor, it would be coercion if there was another man waiting in the hall and Mr. Swearegen said to Ms. Morales, if you don't engage in prostitution with this man, then I'm going to beat you up. That would be a set of facts where duress would be appropriate. Is there a case, case that you could point to that, um, supports, um, your argument or we hear on a question of first impression? Well, your Honor, we're, the, the case is cited in my brief. I don't, I don't have a case specifically on point. There aren't many out there, frankly, that I was able to point to where women were either brought to the United States on false pretenses that there was a man here that was going to marry them. Then they get here and are essentially imprisoned and forced into prostitution or where they're brought here on some other sort of false pretense and basically, again, kidnapped, imprisoned and forced by threat of beating, um, and rape that if they don't engage in prostitution. Um, there is a third one where women were brought here on the pretense that they were, they were paying a smuggling fee of $16,000-$18,000. When they brought, were brought here, they would be able to pay it off by working in restaurants and diners and so forth. They got here owing the money and then were, uh, imprisoned and made to prostitute themselves in order to pay the smuggling fee. What about the evidence in the record that he made her take some photographs to, so he could post them on a, like a prostitution website or a website advertising her? Your Honor, there is no evidence in the record that he made her take the photographs. The evidence in the record, if you'll excuse me for a minute, was that the photographs were taken. Um, on, uh, page 38 of the, uh, transcript of Record on Appeal, when they're going through the text messages back and forth between the two, there's no, uh, allegation that he was making her take the photos. The, the, the, um, the allegation, or the, the facts were that there were already intimate videos there of the two of them. He wanted to post them, to publish them, and she did not want him to do that. No, there's no suggestion that he made her take, uh, inappropriate pictures of herself. So, with that, then, the second, uh, the second problem with the, with the district court's finding, first, that there was no, no act of , uh, by Mr. Swerdjian on Ms., on Ms. Morales. Secondly, the attenuation of the facts set out in the timeline, it was a, it was a month before the, the business with the posting of the video until the trip to Hobbs, which was on June 14th, there's no evidence in the record that there was any coercion, uh, with respect to that trip, and, in fact, Ms. Morales nowhere said that she made that trip involuntarily. The third matter, and we've already discussed it to some degree, is that, is the fight that the district court relied on as well to apply the duress, uh, enhancement. And as, as I stated, um, the fight happened after the, uh, event at the hotel room. There's nothing that happened at the hotel, and there also is nothing in any of the reports at any time that the video business that happened in, on May 17th had anything to do with what happened at the motel. I know the court deduced that. He doesn't have to relate to the offense conduct, does it, to get this enhancement? He could be coercing her in a more general manner. And if that coercion resulted in her crossing the state line with him, that's enough, isn't it? He didn't have to direct the threat to publish the video to a trip to Hobbs, did he? Your Honor, the, the definition is conduct that negates the voluntariness of the victim. And I, I propose that there has to be some causal connection, by the way that is worded, between the coercion and the event. If it were not that, Your Honor, I think that there are a myriad of life experiences to which duress could be applied. If somebody has an argument a year ago and makes a threat, and a year later something happens, does that make it a duress-enhanceable conduct? How do you get around the First Circuit case that's been brought up, the Anderson case, where the victim expressly disavowed the idea that she'd been coerced into traveling to engage in prostitution, but the First Circuit said no, he'd forcibly raped the victim a week before, and he was providing her with drugs sometimes, and that that negated the voluntariness, even though she says it had nothing to do with the trip? That was a case where, I believe it was, the Anderson case was one where the, the conduct was apparent between the rape, the beating, the drugging, that that's what was going on, and the fact that the victim subsequently said there was no duress was outweighed by the actual conduct of the aggressor in that case. In this case, we have a month before a threat to publish a video, a voluntary then trip by three people to a casino, a situation where a man comes to a door and the alleged victim, or the Ms. Morales, refuses him, does not engage in prostitution, and then makes a report to the police that Mr. Swerdjian beat her up because of that. And of course, as we know, she subsequently took back that statement to the Lubbock Police Department and to the victim advocate. She, she retracted that whole thing and said she was just mad at him and made it up. Is it your position that she actually had to go through with an act of prostitution for the enhancement to apply? Is my position, well, yes, Your Honor. I mean, at least be put in a position where she felt like she had to prostitute because of a threat that was coming from him. Yes, Your Honor. And clearly she was not put in that position because she didn't do it. She, she simply told the man to go away. She wasn't going to do it. And that was the end of it. And I think that's the strongest argument that coercion, the coercion enhancement should not apply in this case. Okay. Thank you, Your Honor. Thank you, Counsel. Unless there are no more questions. Let's hear from the government.  Good morning. May it please the Court. Counsel, my name is Marissa Ong, and I'm an assistant United States attorney in Las Cruces, New Mexico. If I could, I would like to start with just clarifying one thing. Judge Carson, you asked Ms. Greek about the posting of videos online. Actually, what the evidence that's in the record, and you can find this on page 51 of Volume 3, Sergeant Barrientos, who was at the O'Connell Lodge on June 14th and interviewed Ms. Morales, she asked her, did he force you to do anything? And at that point in time, Ms. Morales replied that he had forced her to put provocative videos online. All of this was in the context of Ms. Morales explaining that Swearengen wanted to put girls on the road, that this all related to prostitution. The reason why that's important is because it goes directly to the fact that Ms. Morales was feeling pressure. She was feeling coerced by the defendant. The district court in this case found that the enhancement applied for two separate reasons. Our position is that either reason independently warrants application of the enhancement, but certainly taking both of them together supports application of the enhancement. First, we have the blackmail incident that occurred in May, and I would also point out it started on May 17th, but it continued all the way through what we at least know as June 6th, when Ms. Morales went to the police and reported that he had posted videos. And on May 22nd, Ms. Morales specifically sends Swearengen a text message that says, I'll do anything you ask. Please don't post them. I think that statement is very important to what she was perceiving was happening at the time. It clearly goes to show that her voluntariness was being negated because she's basically telling Swearengen, I will do anything you ask. Please don't post them. She also references that the defendant is blackmailing her, and the district court specifically found that all of those actions in May related to prostitution and were relevant to the events that happened in Hobbs, New Mexico on June 14th. Didn't she take a different position, though, when she was interviewed for the pre-sentence report and suggested that her conduct was voluntary? She asked that the defendant get a reduced or light sentence. Isn't that a fact contrary to the narrative that you're presenting to us? So Ms. Morales was never interviewed for the pre-sentence report. What happened is the defendant submitted an unsworn statement by Ms. Morales, and the district court specifically said that those statements cut against her credibility because the district court specifically did not credit those statements by Ms. Morales, finding that they were contrary to the evidence that had been presented in the case, and the fact that she wanted Swearengen out of jail cuts against her credibility. And so it's our position that this court should give those statements no weight because the district court specifically did not find her credible with regard to her later statements. If we were going to give those statements any weight, would we have to conclude the district court's finding was clear error? Your Honor, I don't think that it's a factual determination. The credibility determinations are something different, and this court is very deferential to credibility determinations on appeal. I mean, what would the standard be then for determining whether the district court's credibility determination was proper or not? Well, this court has held that credibility findings made at sentencing are virtually unreviewable on appeal, and this court affords the district court great deference when it makes credibility findings. So our position is that those credibility findings are not subject to a clearly erroneous standard. This court should simply defer to the credibility findings made by the district court. Okay. With regard to the conduct that actually occurred on June 14th, the appellant's position is that Ms. Morales would have had to actually engage in prostitution in order for the enhancement to apply. That is not our position. Judge Timkovich, I believe you brought up, what about a situation where there's another man waiting in the lobby? That's exactly what was going on in this case. For this court to hold that the enhancement does not apply under these facts? Do we know if there were multiple persons responding to the website ad? The evidence we have in the record is that there were back page ads that this all related to prostitution, and Ms. Morales stated to law enforcement on June 14th that Swearengin wanted to put girls on the road. We don't have any evidence in the record that there were other specific men waiting, but we do know generally that all of this conduct was related to prostitution and that the defendant had a desire to engage in a prostitution scheme. Does it matter, so Judge Martin talked about the coercion that occurred in Hobbs. Does it matter that the travel across state lines had already occurred at that time and that the coercion occurred on New Mexico soil instead of coercing her in Texas to come to New Mexico? Your Honor, it's our position that it doesn't. I think what this court should focus on is whether or not his actions furthered his man act purposes. It's also our position that any relevant conduct counts, and so if you look at relevant conduct under 1B1.3, that tells us that we can also consider any harm that resulted because of the crime. So it's our position that the beatings that took place are a direct harm that resulted from the defendant transporting Ms. Morales across state lines to engage in prostitution. Okay, so that would be evidence of harm as opposed to evidence of coercion. Well, the harm, our position is that the harm that you're looking at is that it is because of the beatings, it's foreseeable that in the future, Ms. Morales was going to feel coerced to engage in prostitution. So basically, he beats her up on the 14th so that next time this situation comes up, she knows that if she refuses again, like she did on the 14th, that she's going to be beaten up. All of that goes to negating her voluntariness. Right, and so your opposing counsel would say that what that means is that next time he brought her across state lines to have her engage in prostitution, that the prior beating in Hobbs would be evidence of coercion in that case, but not for this particular case. And, Your Honor, I disagree with that. I think that what this court should focus on is whether or not the defendant's actions furthered his Mann Act purposes. It's our position that that offense, it's a continuing offense. All of this type of conduct is part and parcel for how sex trafficking works. Previous courts have found that conduct like this is done in order to tear down the victim's psychological state of mind so that they know in the future, hey, if I don't do what this person is telling me, I'm going to get it, so I better just succumb to what they want me to do. My microphone's not working, so I'll try to speak a little louder. But outline for me exactly, because you were saying, you started out saying that there were two separate reasons specifically for the coercion, and you identified the blackmail. I want you to identify for me specifically, in keeping with the guideline, as to the application note of what constitutes coercion. What is your position? In addition to blackmail, do you maintain the facts show in this case? We've been talking about a lot of hypotheticals. I want to know, in this case, what's your position specifically as to what was the coercion? My position is that the blackmail, also Ms. Modales' statements that she had been forced to put provocative photos of herself online. That's part of the blackmail, isn't it? Well, Your Honor, I think that's actually separate from the blackmail because she made those statements on June 14th. So the blackmail, Swearegen was blackmailing her that he was going to post a sex video of the two of them. What she told Sergeant Barrientos on June 14th is that he had forced her to take provocative photos of herself to post online in order to promote his prostitution scheme. So my position is that's a separate offense, but that also goes to show that she was being coerced. And lastly, when they're in Hobbs, New Mexico, and she refuses to have sex with the gentleman who showed up to the hotel, and then – But opposing counsel is saying that occurred after, not before. And our position is that it doesn't matter whether it occurred after. The mere fact that – I think what's important, too, is to look at the timeline of those events on June 14th. The gentleman shows up expecting some sort of sexual encounter with Ms. Modales. She refuses. As soon as Swearegen gets back to the hotel and realizes that Ms. Modales does not have any money to give him, he becomes enraged and he begins beating her up. All of that is directly related to his prostitution scheme. Well, it's related to the prostitution scheme. How is it related to coercion that occurs before the man is seeking sexual favors? Well, Your Honor, it's correct that it didn't occur before the man showed up. However, our position is that the coercion does not need to occur prior to her refusing. And what's your authority for that, looking at the application? Looking at the application, my authority for that is that this court can consider any relevant conduct in applying the application. And if you look at relevant conduct, basically it also encompasses any harm that resulted because of the offense. Do you have any cases where the coercion occurred after the state line was crossed? Your Honor, I believe there is a case cited in the briefs. It's the Bryant case out of the Sixth Circuit where the coercion occurred after they crossed state lines. However, I would point out that Bryant isn't totally on point. It didn't deal with the application of this enhancement. It dealt with a 1591 prosecution where the United States has to prove fraud, force, or coercion, where it's an actual element of the offense. But in the Bryant case, which is a Sixth Circuit case, there it was a very factually similar circumstance. Basically, the defendant brings the victim across state lines. She refuses to engage in prostitution. And then the defendant beats her up. And in that case, the Sixth Circuit did find that that was sufficient to have met the element of fraud, force, or coercion for a 1591 prosecution. And so the coercion in this case, you're required to show that the defendant coerced the victim into crossing state lines, right? That's not our position. Okay, so you think that the victim could voluntarily cross state lines and you could still get there? Yes, Your Honor, because the way that the application reads is it's the coercion can occur as part of the offense. There's nothing in the guideline that requires that it happen simultaneously as they are crossing state lines. The way that the enhancement reads is that fraud or coercion occurs as part of the offense. And our position is that as part of the offense encompasses any relevant conduct related to the offense of conviction. So under your position, they could have talked in Lubbock. We can assume that there was never any blackmail or forcing her to put provocative pictures up. And he proposes to her, hey, let me take you over to Hobbs to engage in prostitution, that she could agree voluntarily. They cross over to Hobbs and she changes her mind at that point. And then he beats her up in Hobbs and she engages in the act. That at that point, you would still be able to get the enhancement. Our position is that we would if the same facts remain where he employs some type of action on her that would negate her voluntariness such as beating her up. So taking the court's hypothetical, let's say they get to Hobbs. She tells him, no, I don't want to do this anymore. He still sends the individual to the hotel room. She refuses. And then he beats her up after the fact. My position would be that the enhancement would still apply under those circumstances. So the voluntariness can go to either the transporting or across state line. I mean, the coercion can go to the transport element or to the prostitution element. Yes, as any part of the offense. And I think what this court should focus on is the defendant's actions, not how the victim is taking it. But what this court should focus on is looking at what the defendant intended with his actions. Were his actions meant to negate the voluntariness of the victim? And was it meant to further the purposes of his Man Act violation? Right, but what if they don't? I'm sorry, Chief, can I? Yeah, of course. I mean, what if he intends to negate her voluntariness, but despite that, he doesn't until they get to Hobbs? It's all voluntary until that time, even though he intended to negate her voluntariness starting way back in Lubbock. Well, Your Honor, our position would be that if he's engaging in conduct that's intended to be coercive, that the application should apply under those circumstances. Because traditionally, when we look at enhancements under the guidelines, we're trying to punish more egregious, culpable behavior by the defendant. I see that I'm out of time. Thank you. Thank you. Why don't you give Ms. Greek a minute? We ran over a little bit. If you want to. Thank you, Your Honors. Your Honors, I only would like to reiterate that the action immediately preceding the gentleman arriving in the hotel room with Ms. Morales was that Mr. Swearegen and the other woman who was with him went out for hamburgers, went out and got something to eat. A man arrives, Ms. Morales declines his advances, and the man leaves. So there was no coercion intended at that point to negate the voluntariness of Ms. Morales with respect to prostitution. Thank you, counsel. Thank you, Your Honor. I appreciate it. Counsel are excused. I think we understand the arguments, and the case shall be submitted. Chris.